1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10   TERRY ELLIS, RONALD FULLER,              CASE NO. 15-5449 RJB
    STEVEN GAVIN, ADAM KRAVITZ,
11   DEANNA LENTZ, CHRISTOPER MEE,            ORDER ON CROSS MOTIONS FOR
    TODD SPARKS, and SAMUEL                   SUMMARY JUDGMENT
12   BRANDISH,

13                    Plaintiffs,

14         v.

15   CLARK COUNTY DEPARTMENT OF
    CORRECTIONS, CLARK COUNTY,
16   JUDGE JOHN HAGENSEN, RAFAELA
    SELGA, a/k/a ELA SELGA, LISA
17   BIFFLE, LYNDA HARPER, DENNIS
    DAVID, THOMAS STILLMAN,
18   JEFFREY MILLER, ROBERT
    KRAMER, DONALD BRONSON and
19   KEITH GAPPMAYER,

20                    Defendants.

21

22         This matter comes before the Court on Plaintiffs' Partial Motion for Summary Judgment

23   (Dkt. 37) and Defendants' Motion for Summary Judgment (Dkt. 42).  The Court has considered

24   the pleadings filed in support of and in opposition to the motions and the file herein.

1    Plaintiffs, homeless individuals living in Clark County Washington, bring this civil rights

2  action alleging that Defendants violated their constitutional rights when Clark County

3  Department of Corrections Work Crews removed and destroyed Plaintiffs' property.  Dkts. 1-9

4  and 22.  Plaintiffs allege that on most occasions, the work crews did so in Plaintiffs' presence

5  and over their objections.  *Id.*  In their Amended Complaint, Plaintiffs make claims for violation

6  of their Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution

7  and for conversion under Washington state law.  Dkt. 22, at 17-18.

8    Plaintiffs move for partial summary judgment, arguing that they are entitled to summary

9  judgment as to Defendants liability for violations of Plaintiffs' constitutional rights and for

10  conversion.  Dkt. 37.  Defendants move for summary dismissal of all claims.  Dkt. 42.  For the

11  reasons provided, both motions (Dkts. 37 and 42) should be denied, in part, and granted, in part.

12                          **I.       RELEVANT FACTS AND PENDING MOTIONS**

13    **A.  FACTS**

14    Different governmental agencies in Clark County contract with the Clark County

15  Department of Corrections to send work crews to various parks and streets to clean up litter and

16  do landscaping.  Dkts. 38-16, at 8 and 46-3, at 6-7.  Work crews are comprised of people

17  convicted of criminal offenses in Clark County.  Dkt. 38-16, at 17.  Work crew supervisors, who

18  are employees of Clark County, direct the crews.  Dkt. 38-16, at 18.  After the crews finish for

19  the day, all items they pick up are taken to the dump.  Dkt. 38-16, at 18.

20    Plaintiffs point to several instances between July 2012 and November 2014 in which they

21  allege the Clark County Corrections work crews improperly took their property; each instance

22  will be discussed more thoroughly below.  Dkts. 38-5, at 2 and 38-9, at 2.

23

24

The Clark County Corrections Department is a part of the Clark County District Court. Dkts. 38-13, at 3-4 and 38-16, at 3.  The presiding judge from 2010-2013 was Defendant Judge John Hagensen.  Dkt. 38-15.  According to Judge Hagensen, generally, all the Clark County District Court judges approved policies for the District Court as a group.  Dkt. 38-15, at 5-6. Defendant Ela Selga is the court administrator and is supervised by the presiding judge of the Clark County District Court.   Dkts. 38-13, at 3-4 and 38-16, at 3.

Ms. Selga was Defendant Linda Harper and Defendant Lisa Biffle's immediate supervisor, and has been in her position since 2006.  Dkts. 38-13, at 2; 38-14, at 5.  Ms. Harper supervised the Clark County Corrections work crew program, including the crew supervisors, from 2003 until January of 2014.  Dkts. 38-13, at 2 and 38-14, at 2.  Ms. Biffle started supervising the work crew program in January of 2014 when Ms. Harper retired.  Dkt. 38-13, at 2.  Ms. Harper and Ms. Biffle were responsible for developing policies for the work crew program and training the crew supervisors.  Dkt. 38-14, at 2-3.

According to Ms. Selga, she had authority to approve policies, and did approve the Clark County Corrections Department March 28, 2012 Written Policy 115 ("March 2012 WP 115"), which was developed by Ms. Harper.  Dkt. 38-16, at 5-6.  The March 2012 WP 115 provided:

> **POLICY:**  Clark County Correctional Work Crews are expected to clean up homeless/transient camps as part of our contractual obligations for both the County and various municipalities.
>
> **PROCEDURES:**
>
> 1. If a camp has been abandoned or there is no one currently at the site immediately clean the camp and restore the area.
>
> 2.  If a camp is currently occupied, notify those present of their need to clean the camp and vacate the area.  Inform them that we will leave the area and return in one hour.  Any property still remaining will be disposed of. . . .

5. Cleaning up homeless camps is no different than cleaning up any other refuse as long as you use the same precautions as you do everywhere else.
a. Give your crew members clear instructions before you begin.
b. Crew members are not to handle syringes. . .
c. Do not pick up feces or any item with feces on it.
d. Make sure all crew members are wearing gloves.

Dkts. 38-16, at 5-6 and 38-18, at 2.

Defendant Jeffrey Miller was a crew supervisor during the relevant period. Dkt. 38-17. In regard to determining whether something was abandoned trash and needed to be picked up, he testified that "if it ain't, I guess a shrub, it gets picked up. It's trash." Dkt. 38-17, at 2-3. Other than shopping carts, which he tries to return, he has not found other things that, in his opinion, should be returned to the owner. Dkt. 38-17, at 4-5. Mr. Miller states that is often difficult to tell whether a homeless person's camp site is abandoned or not. Dkt. 38-17, at 8. He cannot recall ever receiving training on how to determine whether property is abandoned. Dkt. 38-17, at 4. Even if he thought that someone had been there recently (within the last 24 hours), he still picked up any items and disposed of them. Dkt. 38-17, at 8. There were instances when Mr. Miller instructed the crews to pick up items even when someone who asserted ownership was present. Dkt. 38-17, at 11-12. Sometimes, after an item had been picked up and placed in the trailer, people would approach and claim the property belonged to them. Dkt. 38-17, at 11-12. Mr. Miller refused to return any property once it was placed in the trailer or put in a trash bag. Dkt. 38-17, at 11-12 and 14. He did not base these decisions on training or instruction, but on his own determinations. Dkt. 38-17, at 12.

During the time when the March 2012 WP 115 policy was in effect, Ms. Harper testified that if, while in a park, a crew chief came across a tent, a cook site, and clothes but no person, they were to take all the items and clean up the site. Dkt. 38-14, at 6-7. Work crews were to

take any unattended items.  Dkt. 38-14, at 9.  According to Ms. Harper, even backpacks left at bus stops could be taken and thrown away.  Dkt. 38-14, at 12.

Plaintiff Steven Gavin states that his personal property was taken by a Clark County Corrections work crew on or about July 2012.  Dkt. 38-5, at 2.  He maintains that his property had not been abandoned at the time it was taken.  *Id.*  Mr. Gavin explains that he was camped at the south side of Pearson Airfield and left for a meal.  *Id.*  He states that after a couple of hours, around 7:30 a.m., he returned, and saw the work crew van.  *Id.*  Mr. Gavin testified that he spoke with one of the work crew members, but he doesn't remember what they looked like, or how many other crew members were there.  Dkt. 43-7, at 9.  He testified that he asked for his property, and the crew wouldn't tell him anything.  Dkt. 43-7, at 10.  He asserts that all of his property was taken, including his tent, sleeping bag, camp stove, cookware, utensils, clothes, toiletries, MP3 player, headphones, and a bag of geodes.  Dkt. 38-5, at 2.  He indicates that he did not receive any notice before the work crew removed his property and was not given any information about how to retrieve it.  *Id*

Plaintiff Adam Kravitz asserts he sustained losses on two different dates.  Dkt. 38-6.  In August of 2012, he was camping with friends near the north bank of the Columbia River in Vancouver.  Dkt. 38-6, at 3.  He says that he stepped away for a short time.  *Id.*  When he returned, the work crew was there removing his property and putting it in a trailer behind their van.  *Id.*  He asked for the return of his property.  *Id.*  He asserts that the work crew supervisor refused.  *Id.*  Mr. Kravitz states he was not given any notice or told how to retrieve his property. *Id.*  He maintains that the work crew supervisor told him if he continued to insist on having his property returned, he would call the police and have Mr. Kravitz and his friends arrested for illegal camping.  *Id.* Mr. Kravitz states that he did not continue to try to get his property back

from the work crew after the supervisor threatened to call the police because he did not want to be arrested. *Id.* He also maintains that the Clark County Corrections work crew took his property again in December of 2012 while he was at a Christmas party sponsored by a non-profit organization – Share House. Dkt. 38-6, at 2. On the day in question, Mr. Kravitz left his backpack, camping gear, clothes, driver's license, a photograph of a now deceased child, and other personal effects at a spot on the south side of State Route 14 near the intersection with I-5 in the city limits of Vancouver, Washington. *Id.* When he returned to the campsite, all his possessions were gone and the tree under which he'd been camped had been trimmed. *Id.* Mr. Kravitz states that he was "extremely discouraged" and went back downtown. *Id.* He maintains that other homeless friends had also had their possessions taken and had seen the Clark County Corrections work crew leaving their camps. *Id.* He asserts that "because of that and because of the way my site was cleared and things were taken, [he is] positive that it was the work crew which took [his] things as well." *Id.* Mr. Kravitz states that he was given no notice before his possessions were taken, and no information about how to recover them. *Id.*

Plaintiff Christopher Mee states that in August of 2012, his property, which was located near the intersection of State Route 500 and St. John's Boulevard in Vancouver, Washington, was taken by a Clark County Corrections work crew. Dkt. 38-8, at 2. He left the property at his campsite to get a meal, but asserts that he had not abandoned it. *Id.* Mr. Mee indicates that when he returned to the site, he saw the work crew in the area and all of his stuff was gone. *Id.* Mr. Mee states that he recognized the Clark County Corrections work crew because he "had been assigned work in the past to work off fines." *Id.* He states that his property included a tent, sleeping bag, clothes, toiletries, suitcase, and photographs. *Id.* Mr. Mee maintains that he was given no notice before the work crew took his property and did not try to get it back because he

knew, based on his experience with working on them, that the work crew would not return his property. *Id.* Mr. Mee states that while on the Clark County Corrections work crews, he was instructed to remove property that appeared to belong to homeless people. *Id.,* at 3. He states that on each occasion, the property did not appear to be abandoned. *Id.* When he expressed concern about taking the un-abandoned property, Mr. Mee states that the work crew supervisor told him if he didn't do as instructed, he would call someone to pick Mr. Mee up and he wouldn't get work credit for the day. *Id.* Mr. Mee asserts that on none of the work crews he was on gave people any warning that their possessions were going to be taken or any way to get them back. *Id.* Mr. Mee indicates that after the work crews picked up the property, they would throw it away. *Id.* Mr. Mee states that he remembers cleaning up camp sites of a number of individuals near I-5 and Mill Plain Boulevard, Fourth Plain Boulevard, Falk Road, and Burnt Bridge Creek Trail in Vancouver. Dkt. 38-12, at 2.

Plaintiff Deana Lentz states that in August of 2012, her personal property was taken by the Clark County Corrections work crew. Dkt. 38-7. Ms. Lentz asserts that, at the time the property was taken, she had not abandoned it. *Id.* It was in a triangle of trees west of MacArthur Boulevard and north of North Blandford Drive in Vancouver, Washington. *Id.* Ms. Lentz indicates that she had been camping at this location for around a month with her fiancé, Gerald Cameron. *Id.* The day she asserts that her property was taken, she had just returned from work around noon, and saw the work crew picking up her possessions. *Id.* and Dkt. 43-5, at 7. She states that the "crew was in a white van with City of Vancouver markings, pulling a trailer with an outhouse in it." Dkt. 38-7. In her declaration, she indicates that she approached the supervisor, who appeared to be in a Clark County sheriff's uniform and asked if they could have their possessions back. *Id.* He told them "no," and "tough fucking luck." *Id.* During her

deposition, Mr. Lentz testified that she could not remember what the supervisor wore, but that he was a "tall, kind of chunky," white male.  Dkt. 43-5, at 10-11.  Ms. Lentz states that her property included jewelry, tents, sleeping bags, tarps, clothing, Coleman cook-stove, coolers, barbecue, dishes, utensils, tools, landscaping equipment, bike, family photographs, legal documents like birth certificates, and her mother's ashes.  Dkt. 43-5, at 2-3.  She maintains that she received no notice that her property was going to be taken and no information on how to retrieve it.  *Id.* at 2.

Plaintiff Terry Ellis states that on September 29, 2012 his personal property was taken by a Clark County Corrections work crew.  Dkt. 38-3, at 2.  Mr. Ellis states that at the time his property was taken, he had not abandoned it.  *Id.*  He asserts that he was waiting for a bus on the north side of Mill Plain Boulevard in Vancouver, Washington when he saw a woman with a disabled car nearby.  *Id.*  Mr. Ellis left his property in bags by the bus stop and went to help the woman.  *Id.*  He saw a Clark County Corrections work crew van stop in front of his property.  *Id.*  Mr. Ellis states that he approached a corrections employee, Mr. Miller, and told Mr. Miller that the property was his.  *Id.*  Mr. Ellis maintains that he explained why he left his stuff, identified the contents of the bags and asked to have his property returned.  *Id.*  Mr. Ellis asserts that Mr. Miller refused.  *Id.*  Mr. Ellis states that the work crew took new clothes, which had been given to him so that he could apply for work, and food.  *Id.* Mr. Ellis asserts that the work crew gave him no notice before they took his property, and gave him no information on how to recover his property.  *Id.,* at 3.  Mr. Ellis also maintains that he has been camping at other locations and observed the work crews attempted to take people's property (that obviously wasn't abandoned) without warning or advance notice.  *Id.*

In February of 2013, Clark County Corrections changed its policy regarding items that were in containers.  Dkt. 43-3, at 25.  Ms. Harper testified that the change in policy occurred due

1  to Mr. Ellis's complaints.  Dkt. 46-3, at 3.  The crew supervisors were told not to pick up

2  anything that was in containers, including bags, backpacks, tubs, tents, etc.  Dkt. 43-3, at 25.

3  Ms. Harper states that all the crew chiefs were also told on or around February 23, 2013 to take

4  photographs of all the stuff that was strewn around on the ground.  Dkt. 43-3, at 26.  In a letter

5  dated March of 2013, Judge Hagensen indicated that the work crew supervisors were not to pick

6  up property from homeless camps.  Dkt. 43-3, at 28.  Defendant Selga sent out an email on

7  March 13, 2013, notifying the staff of the policy change, but did not personally train the work

8  crew supervisors on the policy.  Dkt. 38-16, at 10.  She left that up to Defendant Harper, who

9  was still the crew chiefs' supervisor.  Dkt. 38-16, at 10.

10        Plaintiff Roland Fuller states that in April or May of 2013, he left his property in bushes

11  in Esther Short Park in Vancouver, Washington after being called into work by Labor Ready.

12  Dkt. 38-4, at 2.  Mr. Fuller asked a friend, Larry, who is now deceased, to come pick up his stuff.

13  *Id.* and Dkt. 43-9, at 6.  Mr. Fuller states that his friend reported that when he arrived, Mr.

14  Fuller's possessions were missing and that "the work crew was there throwing stuff away."  Dkt.

15  38-4, at 2.  Mr. Fuller maintains that at the time the property was taken, he had not abandoned it.

16  *Id.*  He asserts that the property included his dentures, prescription glasses, sleeping bag, pad,

17  and tarp.  *Id.*

18        On June 11, 2013, Defendant Harper formally redrafted the work crew policy related to

19  homeless camps, ("June 2013 WP 115").  Dkt. 38-16, at 11.  This policy was approved by

20  Defendant Selga, but was not presented to Judge Hagensen for his approval.  Dkt. 38-16, at 11-

21  12.  This June 2013 WP 115 policy provided: "Clark County District Court Offender Work

22  Crews are NOT to remove any property or material from any homeless/transient camp."  Dkt.

23  38-19, at 2.

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 9

1  Ms. Biffle took over as program manager from Ms. Harper on January 1, 2014.  Dkt. 43-

2  4, at 4.

3  Plaintiff Samuel Bradish states that he is homeless and lives in Clark County,

4  Washington.  Dkt. 38-2, at 2.  Around July or August of 2014, he states that he was camping

5  with others in an area "located off Mill Plain and Lincoln at a location know as 'Retard Hill.'"

6  *Id.*  Mr. Bradish asserts that he was watching a friend's property while she went to the store.  *Id.*

7  According to Mr. Bradish, a Clark County Corrections work crew approached, and told him that

8  he had 10 minutes to clear away all his stuff.  *Id.*  Concerned for his friend's property, he moved

9  hers first, and returned to retrieve his own.  *Id.*  When he returned, the work crew had taken his

10  property and was gone.  *Id.*  (He states he knew that it was a Clark County Corrections work

11  crew because he has seen them before.  *Id.*  He recognized their white van with a trailer attached

12  to it which housed a "porta potty" and tools.  *Id.*  He also recognized their lime green safety vests

13  and blue gloves.  *Id.*)  Mr. Bradish states that the work crew removed his personal property

14  including clothes, blankets, tent, tarps, dishes, utensils, legal documents (like his driver's license,

15  Social Security card, Medicare card and Social Security Disability Insurance documents),

16  medications, letters, pictures, and other personal effects.  *Id.*  He maintains that he did not get

17  notice before the work crew arrived, and was not told "where, when, or how" he could retrieve

18  his property.  *Id.*  Mr. Bradish states that at the time his property was taken, he had not

19  abandoned it.  *Id.*

20  Plaintiff Todd Sparks asserts that his personal property was taken by the Clark County

21  Corrections work crew on November 1, 2014.  Dkt. 38-9, at 2.  He maintains that, at the time it

22  was taken, he had not abandoned it.  *Id.*  He states that he left his property under the Mill Plain

23  overpass on the North Side of Mill Plain Boulevard while he went to get a meal at the Share

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 10

House.  *Id.*  When Mr. Sparks returned, all his possessions were gone, but he noticed a work

crew van in the area, so he approached them.  *Id.*  He maintains that he could see some of his

property in the trailer behind the work crew van.  *Id.,* at 3.  He spoke to the work crew

supervisor, who was wearing a Clark County Department of Corrections uniform.  *Id.*  Mr.

Sparks states that he asked for his stuff back (especially his medications) and the crew supervisor

refused.  *Id.* He states that he did not have any notice that Clark County was going to take his

property and was given no information on how to retrieve it.  *Id.*  The following Monday, Mr.

Sparks went to the Clark County Sheriff's property storage department to see if they had his

possessions.  *Id.*  They told him they did not have any of his property.  *Id.* He asserts that the

property that was removed included a computer, clothes, sleeping bags, shoes, tent, flashlights,

prescription glasses, medication, toiletries, food, and other personal items.  *Id.,* at 2.

Joe Hillstead filed a declaration in this case, and states that in June of 2014, he served on

a Clark County Corrections work crew.  Dkt. 38-10, at 2.  His supervisor was named Jeff.  *Id.*

Mr. Hillstead states that the crew traveled in a van which pulled a trailer that had a porta-potty.

*Id.*  He indicates that the crew would drive around Vancouver, to see if there was trash to pick

up.  *Id.*  According to Mr. Hillstead, Jeff would take them to sites where he knew homeless

people regularly camped.  *Id.*  If they saw camping gear at these sites, they would stop and Jeff

would instruct the crew to pick up everything and place it in the trailer.  *Id.*  Mr. Hillstead states

that during the three days he worked with Jeff, they cleared five or six camps.  *Id.*  Mr. Hillstead

feels that none of the property, which included camping gear, clothes, and food, appeared to be

abandoned.  *Id.* He felt like Jeff "had a particular interest in finding property that belonged to

homeless people in order to have the crew pick it up and remove it."  *Id.,* at 3.  At the end of their

shifts, the crew took the property to the dump.  *Id.*  Mr. Hillstead did not see anyone make an

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 11

1   effort to determine to whom the property belonged or to keep it so that it could be retrieved.  *Id.*

2   No notices were left to indicate who had taken the property.  *Id.*

3          Since December of 2014, Danielle Chumley (who also filed a declaration in this case)

4   states that she has been serving on and off on Clark County Corrections work crews.  Dkt. 38-11.

5   Like Mr. Hillstead, she states that she also rode in a van pulling a trailer.  *Id.*  Ms. Chumley

6   indicates that they were instructed to hike the trails in the parks and look for homeless camps.

7   *Id.*  When they found one, the crew chief would go to the camp and tell anybody there that they

8   had 15 minutes to take what they could carry.  *Id.*  She asserts that the crew chief would threaten

9   to call the police if the campers refused to leave.  *Id.*  Ms. Chumley states that the crew was then

10  instructed to pick up all things left by the campers, even if the campers asked to be allowed to

11  keep the property.  *Id.*  She alleges that the campers were given no prior warning of the clean up.

12  *Id.*  She states that the property was placed in the trailer, which at the end of the day, was taken

13  to the dump and everything was thrown away.  *Id.*  According to Ms. Chumley, who participated

14  in this process several times, no one was allowed to have anything once it was placed in the

15  trailer.  *Id.*  She did not observe anyone telling campers where or how they could retrieve their

16  property.  *Id.*  Ms. Chumley felt it was "impossible" for these people to get their stuff back

17  because it was all taken to the dump at the end of the day.  *Id.*, at 3.

18         After this lawsuit was filed, in 2015, on October 1 and October 6, 2015, Ms. Biffle

19  created a PowerPoint presentation and conducted a training to clarify her expectations with her

20  work crew supervisors regarding homeless property.  Dkt. 38-13, at 5-6.  She was aware that the

21  policy was that the work crews were not to remove property at what appeared to be homeless

22  camp sites, but became aware that some clarification would be helpful to her crew supervisors.

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 12

1  Dkt. 43-4, at 16.  Later, she had several meetings with the crew supervisors to discuss how to

2  identify property that may not be abandoned.  Dkt. 43-4, at 17-21.

3      In their Amended Complaint, Plaintiffs make claims under the U.S. Constitution for

4  violation of their rights against unreasonable seizures pursuant to the Fourth Amendment and

5  violation of their due process rights under Fifth and Fourteenth Amendments.  Dkt. 22, at 17-18.

6  They also make claims for conversion under Washington law.  *Id.*  Plaintiffs seek damages,

7  injunctive, and declaratory relief.  *Id.*  They also seek attorneys' fees and costs.  *Id.*

8  **B. PENDING MOTIONS**

9      1.  <u>Plaintiffs' Motion for Partial Summary Judgment</u>

10      Plaintiffs now move for partial summary judgment finding Clark County and the

11  individual Defendants liable for the "unlawful taking of their personal property."  Dkt. 37.  They

12  argue that County is liable for the losses of Gavin, Kravitz, Mee, Lentz, and Ellis because their

13  losses occurred under the March 2012 WP 115, which was an unconstitutional policy.  *Id.* They

14  maintain that the County is liable for the losses of Fuller, Sparks, and Bradish because even

15  though there was a policy change, the crews were not trained on the new policy and continued to

16  behave as they did under the old policy.  *Id.*  Plaintiffs argue that there is undisputed evidence

17  that Mr. Miller violated at least Mr. Ellis's rights and so should be held liable.  *Id.*  Plaintiffs

18  argue that Ms. Harper developed both the March 2012 and June 2013 versions of WP 115, and

19  Ms. Selga approved them.  *Id.*  They argue that both were "personally involved" in depriving

20  Plaintiffs of their property because they participated in establishing the unconstitutional policy

21  and failed to train the staff after the policy was changed.  *Id.*  Plaintiffs argue that Judge

22  Hagensen "was nominally the chief policy maker" during the relevant period so should be held

23  "personally responsible."  *Id.*  Plaintiffs assert that Defendants Judge Hagensen and Biffle are

24

1    also individually liable because they failed to train their staff after the WP 115 was changed in

2    June of 2013.  (Plaintiffs then cite case law for municipal/county liability – not individual

3    supervisor liability).  *Id.*  Plaintiffs argue that the County is liable to them for conversion because

4    it is vicariously liable for the torts of its employees.  *Id.*  They assert that Mr. Miller is liable to

5    Mr. Ellis for conversion. *Id.*

6           Defendants respond and argue that Plaintiff's motion should be denied.  Dkt. 47.  They

7    argue that as to Plaintiffs Gavin, Kravitz, Lentz, and Fuller there are issues of fact as to who took

8    their property – Defendants or some other entity or individual.  *Id.*  They argue that there are also

9    issues of fact as to whether the property of Plaintiffs Gavin, Kravitz, Lentz, and Fuller was

10   abandoned.  *Id.*  Defendants argue that Plaintiffs' motion appears to address only their due

11   process claims.  *Id.*  Defendants argue that to the extent that Plaintiffs move for summary

12   judgment on their due process claims, their motion should be denied because any process that

13   was due is satisfied through the Washington State Tort Claim Act.  *Id.*  They argue that the

14   Washington State Tort Claim Act provides sufficient post-deprivation process because the

15   deprivation was caused by unauthorized acts of their employees.  *Id. (*citing *Pratt v.Taylor,* 451

16   U.S. 527, 538 (1981)).  The Defendants argue that Plaintiff's motion for summary liability

17   against the individual Defendants Hagensen, Selga, Biffle, and Harper should not be granted

18   because there is no evidence that these Defendants actively participated in the actual work of the

19   work crews, or were in some other manner complicit in the taking of property that was not

20   abandoned.  *Id.*  They argue that Plaintiffs are not entitled to a judgment of liability against Mr.

21   Miller, and that the claim is "more properly a claim under the Washington Tort Claim Act."  *Id.*

22   Defendants argue that to the extent that Plaintiffs seek a judgment against them for not

23   implementing training regarding what constituted abandoned property, Plaintiffs failed to present

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 14

1 "a legal standard that should have been provided in training and implemented in practice." *Id.*

2    Plaintiffs reply, and argue that there are no issues of fact as to whether the property was

3 abandoned or whether the Clark County Corrections work crews took their possessions.  Dkt. 48.

4 They argue that their motion regarding their due process claims should not be denied because

5 post-deprivation remedies do not save unconstitutional acts taken pursuant to established

6 procedures as was the case here. *Id.* (*citing Zimmerman v. City of Oakland,* 255 F.3d 734, 738

7 (9th Cir. 2001). They point out that despite the Defendants urging, they are not only making their

8 motion for partial summary judgment on their claims under the due process clauses but also

9 under the Fourth Amendment. *Id.*  Plaintiffs argue that Defendants make no argument that their

10 actions were reasonable under the Fourth Amendment, and so Plaintiffs' assert that their motion

11 as to these claims should be granted. *Id.*  Plaintiffs argue that Defendants do not meaningfully

12 respond to their motion on their conversion claims, and so, assert that their motion should be

13 granted on those claims. *Id.*

14    2.  Defendants' Motion for Summary Judgment

15    Defendants move for dismissal of Plaintiffs Gavin, Kravitz, Lentz, and Fuller's claims,

16 arguing, as they did in their response to Plaintiffs' motion, that these Plaintiffs have failed to

17 show that Clark County had anything to do with their losses.  Dkt. 42. Defendants argue that the

18 claims asserted against Judge Hagensen should be dismissed because none of the Plaintiffs

19 complained about policies of which he approved.  *Id.*  Defendants note that Plaintiffs complain

20 about the implementation of the polices, but make no showing that Judge Hagensen had any

21 knowledge of the wrongful dispositions of property before being served with the Complaint in

22 this case. *Id.*  Defendants argue that claims against Ms. Selga should be dismissed because

23 although she approved the policies, Plaintiffs do not complain about the policies, but about their

24

1   implementation, which was delegated to Ms. Harper and Ms. Biffle. *Id.* She did not handle the

2   day to day operation of the crews. *Id.* They assert that Plaintiffs have not shown that actions on

3   the part of Ms. Selga, Ms. Harper, or Ms. Biffle resulted in their losses. *Id.* Defendants also

4   move for dismissal of the claims against Defendants Donald Bronson, Dennis David, Keith

5   Gappmeyer, Robert Kramer, and Thomas Stillman, all of whom are work crew supervisors that

6   work for Clark County. *Id.* Defendants argue that although the Complaint makes claims for

7   violations of the Fourth, Fifth and Fourteenth Amendments, "[i]t seems clear that the Court need

8   focus only on whether there is a properly asserted Due Process Claim." *Id.,* at 10.  Citing *Pratt*

9   *v.Taylor,* 451 U.S. 527, 538 (1981), Defendants again argue that the Due Process claims should

10   be dismissed because Washington State Tort Claim Act provides sufficient process, even if it is

11   post-deprivation, because all acts here, to the extent they occurred, were unauthorized. *Id.*

12        Plaintiffs generally oppose Defendants motion, but in their Response to Defendants'

13   motion, Plaintiffs stipulate to the dismissal of Defendants Donald Bronson, Dennis David, Keith

14   Gappmeyer, Robert Kramer, and Thomas Stillman.  Dkt. 45, at 15.  These parties should be

15   dismissed and no further analysis is need as to the claims asserted against them.  Plaintiffs argue

16   that the rest of Defendants' motion should not be granted, raising the same arguments made in

17   their motion and in the reply to their motion.  Dkt. 45.

18                    **II.    <u>DISCUSSION</u>**

19   **A.  SUMMARY JUDGMENT STANDARD**

20        Summary judgment is proper only if the pleadings, the discovery and disclosure materials

21   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

22   movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

23   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

24

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. CLAIMS UNDER 42 U.S.C. § 1983 GENERALLY**

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2)

the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Vague and conclusory allegations of official participation in a civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982).

Plaintiff's Partial Motion for Summary Judgment (Dkt. 37) as to the claims of Plaintiffs Lentz, Kravitz (in regard to his December 2012 loss) and Fuller should be denied.  Plaintiffs have failed to show that there are no issues in dispute as to whether their losses were by a "person acting under the color of law" who is a Defendant here.  Defendants properly point out that there are issues of fact as to whether a Clark County Corrections work crew took these Plaintiffs' property.  Dkt. 47.  While Plaintiff Lentz states, in part of her declaration, that a Clark County Corrections work crew took her possessions, she also states in that same pleading that she knew it was a work crew because the van had "City of Vancouver markings."  Plaintiffs do not dispute that the City of Vancouver also had work crews that cleaned up and performed landscaping work.  Her motion for summary judgment should be denied.

Likewise, in regard to his December 2012 loss (he also claims a loss in August 2012), Plaintiff Kravitz states that while at a holiday party at the Share House his possessions were taken from a spot in the City of Vancouver.  Dkt. 38-6, at 2.  He was not present when they were

1    taken, nor did he see Clark County Corrections work crew in the area.  *Id.*  Mr. Kravitz states

2    that he heard from others that a work crew had been through and taken other people's property.

3    *Id.*  Defendants point out that there are other work crews, not just those that belong to the

4    County.  There are issues of fact as to who took Mr. Kravitz's property in December of 2012.

5    His motion for summary judgment on liability should not be granted for his December 2012 loss.

6        Plaintiff Fuller's motion for summary judgment regarding liability should also be denied.

7    Plaintiff Fuller also was not present when his possessions were taken from Esther Short Park,

8    and did not see a work crew in the area.  Dkt. 38-4, at 2.  While he maintains that his deceased

9    friend told him that when he arrived Mr. Fuller's stuff was gone and that a work crew was there

10   throwing stuff away, Defendants properly point out that the statements of this deceased man may

11   not be admissible.  Certainly, it is not appropriate to grant summary judgment for Mr. Fuller on

12   the strength of these assertions alone.  Plaintiffs' motion for summary judgment on behalf of Mr.

13   Fuller should be denied.

14       Defendants argue that Plaintiff Gavin is not entitled to summary judgment, in part,

15   because there are issues of fact as to who took his property. Dkt. 47.  Contrary to Defendants'

16   assertions, Plaintiff Gavin states that his property was taken by a Clark County Corrections work

17   crew.  Dkt. 38-5, at 2.  He states that he saw the work crew van.  *Id.*  While he does not

18   remember what any of the individuals looked like, he states that he asked for his property back,

19   but the crew wouldn't tell him anything.  Dkt. 38-5, at 2 and 43-7, at 10.  There is no contrary

20   evidence in the record.  Plaintiff Gavin's motion for partial summary judgment should not be

21   denied on this basis, and his motion should be granted, in part, as explained below.

22

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 19

1     Accordingly, this opinion will now consider the constitutional claims against the

2  Defendants based on claims by Plaintiffs Gavin, Kravitz (for the August 2012 loss), Mee, Ellis,

3  Bradish, and Sparks.

4    C.  **CLAIMS UNDER 42 U.S.C. § 1983 ASSERTED AGAINST CLARK COUNTY**

5     A county or municipality is responsible for a constitutional violation only when an action

6  taken pursuant to a county or municipal policy of some nature caused the violation. *Monell v.*

7  *Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  In order to

8  successfully plead §1983 liability on the part of the County, Plaintiffs must allege: (1) they were

9  deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a

10  deliberate indifference to their constitutional rights; and (4) the policy was the moving force

11  behind the constitutional violation. *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237

12  F.3d 1101, 1110–11 (9th Cir. 2001)(*internal quotations omitted*).

13     Plaintiffs Gavin, Kravitz (for the August 2012 loss), Mee, and Ellis assert that their

14  Fourth, Fifth, and Fourteenth Amendment rights were violated while the County's March 2012

15  WP 115 policy was in effect.  Plaintiffs Bradish and Sparks assert that their rights were violated

16  after the 2013 change in policy due to the County's long standing practices and a failure to train.

17     "The Fourth and Fourteenth Amendments protect homeless persons from government

18  seizure and summary destruction of their unabandoned, but momentarily unattended, personal

19  property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012).  In *Lavan*, the

20  Ninth Circuit held that homeless individuals, who brought a case against the City of Los Angeles

21  for the seizure and destruction of their personal property which had been left unattended on city

22  sidewalks, had shown a likelihood of success on the merits of their claims for relief under both

23  the Fourth and Fourteenth Amendments. *Id.*  There, as here, employees of the city, pursuant to a

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 20

1   city ordinance, would pick up and throw away property which had been left on the city

2   sidewalks.  *Id.* The property taken in *Lavan* was similar to the property taken in this case and

3   included personal identification documents, family memorabilia, blankets, clothes, and shelter.

4   *Id.*   The *Lavan* court noted that the city employees did not "have a good faith belief" that the

5   property was abandoned, particularly because, in some cases, the individual plaintiffs or others

6   would inform the city employees that the property was not abandoned.  *Id.*  Despite this

7   knowledge, the city workers would take the property and immediately destroy it.  *Id.*  The court

8   held that the plaintiffs had a Fourth Amendment right in not having their property unreasonably

9   seized, and that the city's seizure and summary disposal of the property was unreasonable.  *Id.*

10  Further, the court held that the plaintiffs had a protected interest in the continued ownership of

11  their property, and so the city had to comport with the requirements of due process.  *Id.*  The city

12  admitted that it failed to provide notice or any opportunity to be heard before it destroyed the

13  property.  *Id.*  The court noted that the "decision to forego any process before permanently

14  depriving [plaintiffs] of protected property interests is especially troubling given the

15  vulnerability of Skid Row's homeless residents."  *Id.*  It concluded that the plaintiffs were likely

16  to succeed on the merits of their due process claims.  *Id.*

17              1.   Fourth Amendment Claims Against Clark County

18          The Fourth Amendment provides that, "the right of the people to be secure in their

19  persons, houses, papers and effects, against unreasonable searches and seizures, shall not be

20  violated...."  U.S. CONST. amend. IV, § 1. "A 'seizure' of property occurs when there is some

21  meaningful interference with an individual's possessory interests in that property."  *Lavan*, at

22  1027(holding that "the unabandoned property of homeless persons is not beyond the reach of the

23  protections enshrined in the Fourth and Fourteenth Amendments").  Accordingly, the

24

government's "seizure and destruction of . . . property remains subject to the Fourth Amendment's reasonableness requirement." *Id.,* at 1029.

By seizing and destroying Plaintiffs Gavin, Kravitz (in August of 2012), Mee, and Ellis's personal effects pursuant to the March 2012 WP 115, the County "meaningfully interfered with [these Plaintiffs'] possessory interests in that property." *Lavan,* at 1030.  Further, the County's immediate destruction of the property (rather than holding it for possible return) made the seizure unreasonable under the Fourth Amendment.  *Id.,* at 1030-1031 (city's immediate destruction of property rendered the seizure unreasonable).  "The Fourth Amendment forbids . . .  the destruction of a person's property, when that destruction is unnecessary—i.e., when less intrusive, or less destructive, alternatives exist." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 977–78 (9th Cir. 2005).

Likewise, the County's seizure and immediate destruction of Plaintiffs' Bradish and Sparks' personal property pursuant to its long standing custom of picking up and immediately destroying unattended property was unreasonable and violated Plaintiffs Bradish and Sparks' Fourth Amendment rights.  An official policy upon which county liability is premised may be either "formal or informal." *City of Saint Louis v. Praprotnik,* 485 U.S. 112, 131 (1988).  An informal policy exists when a plaintiff "can prove the existence of a widespread practice that, although not authorized by an ordinance or an express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.*, at 127.  There is sufficient evidence in the record to conclude that even after the policy change, County employees continued to pick up and destroy at least some unattended property.

Defendants' argument that it wasn't the March 2012 WP 115 policy itself that was a problem (because it only addressed abandoned property), but the execution of it, is misplaced.

1    Contrary to Defendants' assertions, the policy states that work crews were to "immediately"

2    clean up all homeless camps "if a camp has been abandoned or there is no one currently at the

3    site."  The only evidence in the record is that the County's employees took all unattended

4    property and then immediately destroyed the property, regardless of whether the property was

5    abandoned.  Further, as to Plaintiffs Gavin, Kravitz (for the August 2012 loss), Ellis, Bradish,

6    and Sparks, the County employees were told at the time of the taking that the property was not

7    abandoned, so it cannot now claim a "reasonable good faith belief" that the property was

8    abandoned.  The County also cannot now claim that it was justified in the takings due to

9    Plaintiffs' violations of various laws regarding illegal camping.  "Violation of [an ordinance]

10   does not vitiate the Fourth Amendment's protections of one's property.  Were it otherwise, the

11   government could seize and destroy any illegally parked car or unlawfully unattended dog

12   without implicating the Fourth Amendment."  *Lavan,* at 1029.  Plaintiffs Gavin, Kravitz (for the

13   August 2012 event), Mee, Ellis, Bradish, and Sparks are entitled to partial summary judgment on

14   their Fourth Amendment claims against the County.

15                      2.   Fifth and Fourteenth Amendment Claims against Clark County

16          The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall ... be

17   deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.

18   The Fifth Amendment's due process clause, however, "only applies to the federal government."

19   *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008)(*citing Betts v. Brady,* 316 U.S. 455,

20   462 (1942)("Due process of law is secured against invasion by the federal Government by the

21   Fifth Amendment and is safe-guarded against state action in identical words by the

22   Fourteenth.").

23

24

1     Plaintiffs make no claims against the federal government, so their Fifth Amendment

2  claims should be dismissed.  Defendants' motion to dismiss all Plaintiffs' Fifth Amendment

3  claims (Dkt. 42) should be granted and Plaintiffs' motion for summary judgment on their Fifth

4  Amendment claims (Dkt. 37) should be denied.

5     Under the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or

6  property, without due process of law."  U.S. CONST. amend. XIV, § 1. "Any significant taking

7  of property by the State is within the purview of the Due Process Clause."  *Lavan,* at 1031

8  (*quoting Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).  Plaintiffs' claims for violation of their due

9  process rights, then, are more properly asserted against Defendants under the Fourteenth

10  Amendment.  *See Lavan*, at 1030.  Application of the Fourteenth Amendments' due process

11  protections require the familiar two-stage analysis: (1) "whether the asserted individual interests

12  are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property;'"

13  and (2) "if protected interests are implicated," then it must be determined "what procedures

14  constitute 'due process of law.'" *Id.* (*citing Ingraham v. Wright*, 430 U.S. 651, 672 (1977)).

15     The property interests implicated here are the Plaintiffs' interests "in the continued

16  ownership of their personal possessions."  *Lavan,* at 1031.  Plaintiffs contend, and there is no

17  evidence to the contrary in the record, that they owned the property in question, and had not

18  abandoned it.  Accordingly, they maintained a protected interest in their personal property.

19  *Lavan,* at 1031.  "Because homeless persons' unabandoned possessions are "property" within the

20  meaning of the Fourteenth Amendment, [Clark County] must comport with the requirements of

21  the Fourteenth Amendment's due process clause if it wishes to take and destroy them."  *Id.,* at

22  1032.

23

24

1    Generally, "individuals must receive notice and an opportunity to be heard before the

2  Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510

3  U.S. 43, 48 (1993).  Aside from the case of Mr. Bradish, Clark County does not contend that it

4  gave Plaintiffs any notice at all or an opportunity to be heard before it permanently deprived

5  them of their property.  Further, there is no evidence in the record that the ten minutes notice

6  given Mr. Bradish was reasonable.  "[D]ue process requires law enforcement to take reasonable

7  steps to give notice that the property has been taken so the owner can pursue available remedies

8  for its return." *Lavan*, at 1032.  Moreover, the County failed to provide any process for the

9  possible return of the property.  The County's policy of same day destruction of the property

10  with no procedural protections "presents an enormous risk of erroneous deprivation." *Id.*

11    Defendants maintain that there was an adequate post deprivation remedy available for

12  Plaintiffs in the Washington State Tort Claim Act, RCW 4.92.090.-.100 (state/county liable for

13  the tortious conduct of officials and employees), and so Plaintiffs' procedural due process rights

14  were not violated.  Dkts. 45, 47, and 49.  They argue that the Washington State Tort Claim Act

15  provides sufficient post-deprivation process because the deprivation was caused by unauthorized

16  acts of their employees.  *Id.* (*citing Pratt v.Taylor,* 451 U.S. 527, 538 (1981)).  They maintain

17  that the taking of unabandoned property that occurred before the change in policy was an

18  unauthorized act because the March 2012 WP 115 only addressed "abandoned" property.  *Id.*

19  Contrary to Defendants' assertions, the policy states that work crews were to "immediately"

20  clean up all homeless camps "if a camp has been abandoned or there is no one currently at the

21  site."  Again, the only evidence in the record is that the County's employees took all unattended

22  property and then immediately destroyed the property.  Accordingly, work crews were following

23  the policy, and not acting in an unauthorized manner.

24

1    Defendants also argue that to the extent that the claims are based on the taking of

2  property after the change in policy in June of 2013, the work crews' actions were unauthorized

3  acts, and so the post deprivation remedy of the Washington Tort Claims Act provides sufficient

4  due process.  *Id.*  Defendants' arguments are unavailing, however.  In the Ninth Circuit "post

5  deprivation remedies [cannot] save an otherwise unconstitutional act from unconstitutionality in

6  cases in which the [governmental actor] acted pursuant to some established procedure."

7  *Zimmerman v. City of Oakland,* 255 F.3d 734, 738 (9th Cir 2001).  When a "deprivation occurs

8  pursuant to . . . [an] institutionalized practice, it is neither random nor unauthorized, but wholly

9  predictable, authorized, and within the power of the [county] to control, and the justifications for

10  post-deprivation remedies does not apply and the normal pre-deprivation hearing is required to

11  satisfy due process."  *Id.*  The evidence in this case is that the long standing practice of, at least

12  sometimes, taking unattended property continued even after the change in policy.  The County's

13  failure to provide pre-deprivation process violated Plaintiffs' Gavin, Kravitz (for the August

14  2012 event), Mee, Ellis, Bradish, and Sparks' rights under the Fourteenth Amendment.

15    The Defendants' motion to summarily dismiss Plaintiffs' Fifth Amendment claims (Dkt.

16  42) should be granted.  Plaintiffs Gavin, Kravitz (for the August 2012 event), Mee, Ellis,

17  Bradish, and Sparks' motion for summary judgment on their Fourteenth Amendment claim

18  against the County (Dkt. 37) should be granted.  The Defendants' motion to summarily dismiss

19  all Plaintiffs' Fourteenth Amendment claims (Dkt. 42) should be denied.

20    D.  **CLAIMS UNDER 42 U.S.C. § 1983 ASSERTED AGAINST INDIVIDUAL
          DEFENDANTS**

21

22    The motions regarding claims asserted against Defendants Miller, Judge Hagensen, Ms. Selga,

22  Ms. Biffle, and Ms. Harper, in their individual capacities, will now be addressed.

23
          *a.  Work Crew Chief Defendant Miller*

24

1      Plaintiff Ellis's motion for partial summary judgment (Dkt. 37) regarding Mr. Miller's

2  liability should be granted.  Plaintiff Ellis states that on September 29, 2012, his back pack was

3  taken from a bus stop by a work crew supervised by Miller.  Dkt. 38-3, at 2.  Plaintiff indicates

4  that he was helping a distressed motorist and could see the bus stop.  *Id.*  Plaintiff Ellis

5  approached Defendant Miller, asked for the return of his property, and Miller refused.  *Id.*

6  Plaintiff was not given any notice that his property was being taken, or told how to retrieve his

7  property.  *Id.*  The undisputed evidence in the record is that at the end of the day, the work crews

8  threw everything they collected into the trash.  There is no evidence that anything to the contrary

9  happened to Mr. Ellis's property here.  By seizing and destroying Plaintiff Ellis's personal

10 effects, Defendant Miller "meaningfully interfered with [Plaintiff Ellis's] possessory interests in

11 that property," and the immediate destruction of that property made the seizure unreasonable.

12 *Lavan,* at 1030.  Defendant Miller should be held liable for violating Plaintiff Ellis's Fourth

13 Amendment rights.

14     Plaintiffs' motion for partial summary judgment on liability against Defendant Miller in

15 regard to all the remaining Plaintiffs (Dkt. 37) should be denied, and Defendants' motion for

16 summary dismissal of the remaining Plaintiffs' claims against Defendant Miller (Dkt. 42) should

17 be granted.  There is no evidence in the record that Defendant Miller played a role in any of the

18 other Plaintiffs' deprivations.  With the exception of claims by Plaintiff Ellis, claims against

19 Defendant Miller should be dismissed.

20         *b.  Liability of the Work Crew Chiefs' Supervisors Under § 1983*

21     A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of

22 supervisory responsibility or position.  *Monell v. New York City Dept. of Social Services*, 436

23 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).  "A defendant may

24

1  be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal

2  involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

3  supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202,

4  1207 (9th Cir. 2011)(*quoting Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).

5      There is no allegation that Defendants Judge Hagensen, Selga, Harper, or Biffle were

6  personally involved in the depravations at issue here.  Accordingly, the Plaintiffs must show that

7  these various supervisors "breached a duty to plaintiff which was the proximate cause of the

8  injury." *Starr*, at 1207.

9      Plaintiffs' motion for partial summary judgment against Defendant Judge Hagensen, in

10  his individual capacity, (Dkt. 37) should be denied and Defendants' motion to summarily dismiss

11  the constitutional claims against him (Dkt. 42) should be granted.  Both parties, in their briefing,

12  appear to conflate individual liability of a supervisor with liability of the County.  For example,

13  Plaintiffs' assert that Defendant Judge Hagensen is liable to them because he was "nominally the

14  chief policy maker."  Dkt. 37.  However, "constitutional tort claims against supervisory

15  defendants turn on the requirements of the particular claim—and, more specifically, on the state

16  of mind required by the particular claim—not on a generally applicable concept of supervisory

17  liability." *OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).  The record indicates

18  that Defendant Harper drafted, and Defendant Selga approved of, the March 2012 WP 115

19  policy.  Dkts. 38-16, at 5-6 and 38-18, at 2 (containing Defendant Selga's signature). While

20  Judge Hagensen testified that he and/or the other judges generally approved policies, it is not

21  clear that he/they did so in this instance.  Defendant Selga signed off on the policy, not Judge

22  Hagensen.  Defendant Selga testified that in the case of a revision of an old policy, none of the

23  judges played a role in approving revisions. Dkt. 43-2, at 7.  Defendant Selga states she doesn't

24

1    recall if this is a revision of an older policy.  *Id.*  Accordingly, Plaintiffs fail to point to evidence

2    that Judge Hagensen approved the March 2012 WP 115 policy.  Their motion for summary

3    judgment against him based on his being the party that generally approves or actually approved

4    the March 2012 WP 115 should be denied and Defendants' motion granted.

5              Plaintiffs further allege that Judge Hagensen is individually liable because he "was aware

6    work crews were cleaning up property and disposed [sic] of it."  Dkt. 37, at 16.  Plaintiffs,

7    however, cite a portion of the record where Judge Hagensen testified that he was aware that the

8    work crews were picking up **abandoned** property.  Dkt. 43-1, at 7-8 (*emphasis added*).

9    "Warrantless searches or seizures of abandoned property do not violate the Fourth amendment."

10   *Untied States v. Nordling,* 804 F.2d 1466, 1469 (9th Cir. 1986).  He should not be held

11   personally liable on based on his knowledge that County employees were picking up abandoned

12   property.  To the extent that Plaintiffs seek summary judgment against him on this basis, their

13   motion should be denied and Defendants' motion to dismiss their claims granted.  Plaintiffs

14   further argue that "[t]he judges never took any steps to determine if the work crews attempted to

15   locate the owner of the property that had some apparent value."  Dkt. 37, at 16.  Even assuming

16   that knowledge of a Fourth Amendment violation is sufficient for supervisor liability under §

17   1983, Plaintiffs fail to show that Judge Hagensen or any of the other judges were aware that

18   anything but abandoned property was being removed.  The record indicates that once he did

19   become aware of that there were such assertions, he instituted a policy in March of 2013 that no

20   property that appeared to belong to homeless people was to be picked up at all.  Dkt. 43-1, at 10.

21   Plaintiffs assert that Judge Hagensen is individually liable for failing to adequately train staff

22   after the WP 115 policy was changed.  Dkt. 37.  Defendants point out that Judge Hagensen was

23   the presiding judge 2010-2013 (Dkt. 38-16, at 4); the only Plaintiffs who had a property loss

24

1  after the policy change were Plaintiffs Bradish and Sparks, both of whom suffered their losses

2  after July of 2014.  (There are issues of fact as to who took Plaintiff Fuller's property in April or

3  May of 2013, so he is not entitled to summary judgment regarding Judge Hagensen's liability.)

4  Plaintiffs point to no evidence supporting their theory that Judge Hagensen should be held

5  individually liable for Plaintiffs Bradish and Sparks' losses based on a failure to train.  He was

6  then no longer the presiding judge.  Further, even if Mr. Fuller were able to show that his May

7  2013 loss was a result of County action, a single incident would not give rise to the requisite

8  state of mind to hold Judge Hagensen personally liable for a failure to train.

9        To hold Judge Hagensen liable in his individual capacity, Plaintiffs must show that Judge

10  Hagensen "was deliberately indifferent to the need to train subordinates, and the lack of training

11  actually caused the constitutional harm or deprivation of rights."  *Flores v. Cty. of Los Angeles*,

12  758 F.3d 1154, 1158–59 (9th Cir. 2014).  Under this standard, Plaintiff Fuller must point to facts

13  that show that Judge Hagensen "disregarded the known or obvious consequence that a particular

14  omission in their training program would cause [County] employees to violate citizens'

15  constitutional rights."  *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014).

16  Plaintiffs fail to point to any facts that Judge Hagensen acted or failed to act with the requisite

17  state of mind in regard to the failure to train.  Plaintiffs' claims against Judge Hagensen, in his

18  individual capacity, should be dismissed.

19        Both Plaintiffs' motion for summary judgment and Defendants' motion for summary

20  judgment on Plaintiffs' claims against Defendant Selga, in her individual capacity, (Dkts. 37 and

21  42) should be denied.  Plaintiffs argue that Defendant Selga should be held liable as the

22  individual that approved the March 2012 WP 115.  There are issues of fact as to whether there is

23  a sufficient causal connection between her decision to approve the policy and the constitutional

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 30

1   deprivations that resulted.  *Baca*, at 1207.  There are also issues of fact as to whether her conduct

2   in approving the policy "showed a reckless or callous indifference to the rights of others."  *Henry*

3   *A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012).  Plaintiffs also argue that Defendant Selga

4   should be held personally liable for her failure to train the staff after the policy was changed

5   prohibiting work crews from removing property from homeless camps.  To the extent Plaintiffs

6   seek to hold Defendant Selga liable in her individual capacity regarding her failure to train staff

7   after the change in policy, Plaintiffs point to no evidence that she had the required state of mind,

8   that she had "disregarded a known or obvious consequence" of a failure to train.

9        Plaintiffs' constitutional claims against Defendant Biffle in her individual capacity should

10  also be dismissed.  Defendant Biffle became program manager in January of 2014, after the

11  policy had changed.  Plaintiffs fail to make any showing that Defendant Biffle acted in any

12  manner with a deliberate disregard for their constitutional rights.  She understood that the work

13  crews were only picking up abandoned materials and that they were no longer cleaning up camp

14  sites of suspected homeless individuals.  Dkt. 43-4, at 8; 10-14.  When she became aware that

15  more training to clarify what the word "abandoned" meant, she provided more training.  Dkts.

16  38-13, at 5-6; 43-4, at 17-21. Plaintiffs' claims against her should be dismissed.

17       Both parties' motions for summary judgment on liability for violation of their

18  constitutional rights against Defendant Harper, in her individual capacity, (Dkts. 37 and 42)

19  should be denied.  Defendant Harper drafted the March 2012 WP 115, and although she did not

20  have final policy making authority, she managed the implementation of the policy.  "When a

21  supervisory official advances or manages a policy that instructs its adherents to violate

22  constitutional rights, then the official specifically intends for such violations to occur."  *OSU*

23  *Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012).  There are issues of fact as to whether

24

1   she instructed the crew supervisors to violate Plaintiffs' constitutional rights.  There are also

2   issues of fact as to whether her conduct in approving the policy "showed a reckless or callous

3   indifference to the rights of others."  *Henry A.,* at 1004.   Plaintiffs have not shown, however,

4   that she should be held individually liable for a failure to train staff after the WP 115 was

5   changed in 2013 because there is no showing that she showed a deliberate indifference for their

6   rights in not providing further training.  Both parties' motions for summary judgment on liability

7   for violation of their constitutional rights against Defendant Harper, in her individual capacity,

8   (Dkts. 37 and 42) should be denied.

9   **E.  CLAIMS FOR CONVERSION**

10      Plaintiffs move for summary judgment on liability on each of the Plaintiffs' claims for

11  conversion against the County and for Plaintiff Ellis's claim for conversion against Mr. Miller.

12  Dkt. 37, at 21.

13      As above, there are issues of fact regarding who took Plaintiffs Kravitz (for the

14  December 2012 loss), Lentz, and Fuller's property.  Accordingly Plaintiffs' motion for summary

15  judgment on liability as to these Plaintiffs' conversion claims (Dkt. 37) should be denied.

16      Defendants do not meaningfully oppose the remaining Plaintiffs' partial motion for

17  summary judgment on the County and Mr. Miller's liability on their conversion claims.  The

18  motion (Dkt. 37) should be granted.  To the extent that Defendants intend their Summary

19  Judgment Motion (Dkt. 42) to encompass this claim, the motion should be denied.  They offer no

20  basis for the claims' dismissal.

21  **F.  CONCLUSION**

22      Plaintiffs' Partial Motion for Summary Judgment (Dkt. 37) as to the claims of Plaintiffs

23  Lentz, Kravitz (in regard to his December 2012 loss) and Fuller should be denied.  Defendants'

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 32

1   Motion for Summary Judgment as to each of these parties' claims (Dkt. 42) should also be

2   denied.  Remaining for trial is both liability and damages on Plaintiffs Lentz, Kravitz (in regard

3   to his December 2012 loss) and Fuller Fourth and Fourteenth Amendment claims against the

4   County, Defendant Selga, and Defendant Harper.  Plaintiffs Lentz, Kravitz (in regard to his

5   December 2012 loss) and Fuller's claims for conversion also remain for trial.

6          Plaintiffs' Gavin, Kravitz (for the August 2012 loss), Mee, Ellis, Bradish and Sparks'

7   motion for partial summary judgment regarding liability of the County for violations of their

8   Fourth and Fourteenth Amendment rights (Dkt. 37) should be granted and Defendants' motion to

9   summarily dismiss those claims (Dkt. 42) should be denied.  The issues remaining for trial on

10  Plaintiffs' Gavin, Kravitz (for the August 2012 loss), Mee, Ellis, Bradish and Sparks' claims

11  against the County for violations of their Fourth and Fourteenth Amendment rights is the amount

12  of damages.  Both parties' motions (Dkts. 37 and 42) regarding the Fourth and Fourteenth

13  Amendment claims against Defendants Selga and Harper should be denied.  Both liability and

14  damages on the Plaintiffs' Gavin, Kravitz (for the August 2012 loss), Mee, Ellis, Bradish and

15  Sparks' Fourth and Fourteenth Amendment claims against Defendants Selga and Harper remain

16  for trial.

17          Plaintiffs' Gavin, Kravitz (for the August 2012 loss), Mee, Ellis, Bradish and Sparks'

18  motion for summary judgment on the County's liability for conversion of their property (Dkt.

19  37) should be granted.  Remaining for trial is the amount of damages for their conversion claim

20  asserted against the County.

21          Plaintiff Ellis' motion for summary judgment on Mr. Miller's liability for his conversion

22  of Mr. Ellis' property (Dkt. 37) should be granted.  The amount of damages of this conversion

23  remains for trial.

24

Parties did not meaningfully address Plaintiffs' conversion claims against Defendants Judge Hagensen, Selga, Biffle or Harper, if any.  It is unclear if such claims remain for trial or how they would differ from County liability.

All claims against Defendant Miller, except those asserted by Plaintiff Ellis should be dismissed.  All claims asserted against Defendants Donald Bronson, Dennis David, Keith Gappmeyer, Robert Kramer, and Thomas Stillman should be dismissed.  The caption should be amended to reflect dismissal of these parties.  Constitutional claims asserted against Defendants Judge Hagensen and Biffle should be dismissed.  Plaintiffs' Fifth Amendment claims should be dismissed.

## III. ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiffs' Partial Motion for Summary Judgment (Dkt. 37) is:
  - **DENIED** as to:
    - All claims by Plaintiffs Kravitz (based on his December 2012 loss), Lentz, and Fuller;
    - Claims asserted against Defendant Jeffrey Miller on behalf of all Plaintiffs except Plaintiff Ellis,
    - All Plaintiffs' Fifth Amendment claims,
    - Plaintiffs' constitutional claims against Defendants Judge Hagensen, Selga, Harper, and Biffle, in their individual capacities; and
  - **GRANTED** as to:
    - Plaintiffs Gavin, Kravitz (for the August 2012 event), Mee, Ellis,

Bradish, and Sparks' Fourth and Fourteenth Amendment claims against Clark County;

- ▪ Plaintiff Ellis's claims asserted against Defendant Jeffrey Miller;
- ▪ Plaintiffs Gavin, Kravitz (for the August 2012 event), Mee, Ellis, Bradish, and Sparks' claims for conversion against Clark County.

- Defendants' Motion for Summary Judgment (Dkt. 42) is
  - o **GRANTED** as to:
    - ▪ Claims asserted against Defendants Donald Bronson, Dennis David, Keith Gappmeyer, Robert Kramer, and Thomas Stillman;
    - ▪ Except Plaintiff Ellis's, all Plaintiffs' claims asserted against Defendant Jeffrey Miller;
      - All Plaintiffs claims against Defendant Miller are dismissed, except those by Plaintiff Ellis;
    - ▪ Plaintiffs' Fifth Amendment Claims;
      - Plaintiffs' Fifth Amendment claims are dismissed;
    - ▪ Constitutional claims asserted against Defendants Judge Hagensen and Biffle, in their individual capacities;
      - Constitutional claims against Defendants Judge Hagensen and Biffle, in their individual capacities, are dismissed;
  - o **DENIED** as to:
    - ▪ Plaintiffs' Fourth and Fourteenth Amendment claims against the County;
    - ▪ Plaintiff Ellis's Fourth Amendment claims asserted against

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 35

1    Defendant Miller;

2    ▪   Plaintiffs' constitutional claims against Defendants Selga and

3    Harper, in their individual capacities; and

4    ▪   All Plaintiffs' claims for conversion.

5    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

6    to any party appearing *pro se* at said party's last known address.

7    Dated this 16th day of September, 2016.

8

9

ROBERT J. BRYAN
10    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 36